# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| KEVAS L. BALLANCE, JR.,            )<br>    Plaintiff,                              )<br>                                            )<br>    v.                                       )       Case No. 24-3100<br>                                            )<br>ILLINOIS DEPARTMENT OF      )<br>CORRECTIONS *et al.*,              )<br>    Defendants.                         ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court for screening is a Motion for Leave to File an Amended Complaint (Doc. 26) filed under 42 U.S.C. § 1983 by Kevas L. Ballance, an inmate at Lawrence Correctional Center ("Lawrence"). Plaintiff also filed a Motion for Injunctive Relief (Doc. 27).

**I.    Complaint**

**A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* When reviewing a complaint, the court accepts the factual allegations as accurate, construing them liberally in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be

provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**B. Facts Alleged**

The events Plaintiff describes occurred at Western Illinois Correctional Center ("Western) and are alleged against the following Defendants: Illinois Governor J.B. Pritzker, Illinois Department of Corrections ("IDOC") Director Latoya Hughes, Warden Brittany Greene, Second Warden Tara Goins, Corrections Officer John Doe I; Corrections Lieutenant John Doe II, Correction Officer John Moon, Adjustment Committee Members Adam Manton and Brant Mountain, Administrative Review Board Chairperson Ryan Nothnagle, Counselor Jane Doe I, Grievance Officer John Doe III, ten additional Correctional Officer John Does, ten additional Correctional Officer Jane Does, and IDOC.

Plaintiff initially asserts that he filed numerous grievances against Defendant Corrections Officer Doe I and Lieutenants and Sergeants "for different things" before July 1, 2023. (Pl. Amend. Compl., Doc. 26 at 10.)

On July 4, 2023, Plaintiff was walking with a cart to housing unit R-3 for his pending move to housing unit R-1, where he was to begin working in the kitchen. Defendant Doe I stopped Plaintiff and asked where he was going. After Plaintiff responded, Doe I stated that he would ensure Plaintiff did not get a job "[s]ince Plaintiff liked to 'rat' on [Doe I]." (*Id.*)

After Plaintiff arrived at housing unit R-3, Defendant Doe II, accompanied by Defendants John Doe IV, V, and VI, instructed Plaintiff to cuff up and began searching

his cell. Defendant Doe II told Plaintiff he was going to segregation because Plaintiff kept "ratting" on Defendant Doe I. (*Id*.) Plaintiff claims that Defendant Corrections Officer Doe I asked "other officers … to help him pay Plaintiff back for Plaintiff making complaints." (*Id*.) Plaintiff claims he was then escorted to segregation for no reason but claims Defendant Doe IV wrote a false misconduct ticket alleging Plaintiff possessed drugs. (*Id*. at 10-11.)

On July 6, 2023, Defendant Moon explained to Plaintiff that his transfer to segregation was based on a seized paper that tested positive for synthetic cannabis. Plaintiff denied knowingly possessing the contraband and claimed that Moon coerced him into admitting guilt by threatening to charge him with additional rule violations and informing Plaintiff that his time in segregation could last as much as two months. (*Id*.)

On July 10, 2023, Plaintiff appeared before an Adjustment Committee ("Committee"), comprised of Defendants Manton and Mountain, who refused to call Plaintiff's witnesses and provide him with the paper seized or positive drug test results. Plaintiff claims that Manton and Mountain threatened to impose an extended period of segregation if he did not plead guilty to the rule violations.

Plaintiff claims that Defendants Counselor Jane Doe I, Grievance Officer Doe III, Goings, Greene, Hughes, Nothnagle, and Pritzker violated his due process rights by denying submitted grievances challenging the imposed discipline. (*Id*. at 17.)

**C. Analysis**

Plaintiff's Motion for Leave to File (Doc. 26) is granted.

Plaintiff does not state a claim against Defendants Jane Doe I, Doe III, Goings, Greene, Hughes, Nothnagle, and Pritzker for their participation in the IDOC grievance process. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

Furthermore, to the extent Plaintiff names Defendants Goings, Greene, Hughes, and Pritzker based on their supervisory responsibility, his allegations are also inadequate to impose § 1983 liability. *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) ("The doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that because vicarious liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law." *Id*. In *Sandin v. Conner*, 515 U.S. 472, 483 (1995), the United States Supreme Court explained that state-created liberty interests, which is to say, due process protections, "will be generally limited to freedom from restraint which, ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Id*. at 483. "In the absence of

such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005); *see also Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause.").

"'Due process' in transferring an inmate to a detention that deprives the inmate of liberty consists of, at most, 'informal, nonadversary procedures' in a 'reasonable time' with 'some notice' of the prison's rationale for the transfer, an 'opportunity [for the inmate] to present his views' in writing, and periodic reviews afterwards." *Terry v. Stolworthy*, 669 F. App'x 803, 805 (7th Cir. 2016) (quoting *Westefer v. Neal*, 682 F.3d 679, 684-86 (7th Cir. 2012)); *see also Ealy v. Watson*, 109 F.4th 958, 966 (7th Cir. 2024) (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) ("[I]nformal due process requires only that an inmate is provided (1) 'notice of the reasons for the inmate's placement' in segregation and (2) 'an opportunity to present his views,' for instance, in a written statement or at a hearing.") (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024).

Plaintiff raises due process violations regarding the conduct of the June 10, 2023, disciplinary hearing before the Adjustment Committee. Although Plaintiff does not provide facts that establish his liberty was restrained in an atypical or significant manner, he calls into question the neutrality of Defendants Manton and Mountain, who functioned as Committee members, thereby stating a due process claim against them. *See McKinney v. Meese*, 831 F.3d 728, 733 (7th Cir. 1987) (describing the informal due process

requirements, which includes adjudication by a neutral committee that documents its findings); *see also Westefer*, 682 F.3d at 685 ("[O]nly a single prison official is needed as the *neutral* reviewer—not necessarily a committee." (emphasis added)).

Therefore, because Plaintiff states a claim regarding the neutrality of the Committee's proceedings, he also states due process claims against Defendant Moon for coercing Plaintiff to plead guilty and against Defendant Doe IV for authoring a false disciplinary report. *See McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999) ("[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process.").

To make out a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff states a First Amendment retaliation claim against Defendant Corrections Lieutenant John Doe II and Defendant corrections officers John Doe I, IV, V, and VI. *See DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (concluding that a plaintiff's "allegation that he was removed from his job in retaliation for filing a grievance states a claim on which relief can be granted").

Under Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." (*Id*.) "This

requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601–02 (7th Cir. 2016).

Plaintiff's naming of ten "extra John Does" and ten "extra Jane Does" in case he finds other individuals liable violates the intent of Rule 8(a). Plaintiff also does not state a claim against IDOC because "[s]tate agencies are not 'persons' under § 1983 …." *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2006); *see also Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014) ("Section 1983 only permits an individual to sue a 'person' who deprives that individual of his or her federally-guaranteed rights under color of state law.").

The Court informs Plaintiff that the Court cannot effect service of process upon a Doe Defendant. Thus, after the named Defendants have been served and filed their Answer, which typically occurs within sixty days, the Court will enter a Scheduling Order to provide Plaintiff guidance on his responsibilities in identifying the Doe Defendants and the procedures to substitute the real names of the Doe Defendants within the deadline imposed, among other issues.

II. **Injunctive Relief**

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). A preliminary injunction is an "extraordinary and drastic remedy" and "should not be granted unless the movant, *by a clear showing*, carries the burden of

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). In civil suits, "damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)).

"To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) [he] will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018).

Moreover, the Seventh Circuit has described the type of injunction requiring affirmative action as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued" because they require the court to command a defendant to take a particular action. *Id.*

Plaintiff requests that the Court issue a mandatory preliminary injunction enjoining Defendants from using the NARC II test kits, which are employed to identify potential narcotics. However, "[i]f a prisoner is transferred to another prison, his request

for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)); *see also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) ("[The plaintiff's] prayers for injunctive relief are moot because he is no longer an inmate at [the facility] . . . [and] has not shown a realistic possibility that he will again be incarcerated in the same state facility . . . .").

As noted, Plaintiff's alleged constitutional violations occurred at Western in July 2023. Plaintiff has since filed notices (Docs. 9, 13, 16, 24, 25), indicating that he has been transferred to Pontiac Correctional Center and subsequently to Lawrence, where he remains incarcerated. The IDOC website lists Lawrence as Plaintiff's parent institution, and Plaintiff has not shown a realistic probability that he will return to Western. Thus, any injunctive relief would be speculative and directed to Lawrence officials, who are not parties in this case. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (concluding the proper defendant in an action for injunctive relief is the person who "would be responsible for ensuring that any injunctive relief is carried out."). Therefore, Plaintiff's Motion for Preliminary Injunction (Doc. 27) is moot.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 26) is GRANTED.**

2) **Plaintiff's Motion for Injunctive Relief (Doc. 27) is MOOT.**

3) **According to the Court's screening of Plaintiff's Amended Complaint (Doc. 26) under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with the claims noted *supra* against Defendants Manton, Moon, Mountain, and Doe I, II, IV, V, VI. Plaintiff's claims against Defendants proceed in their individual**

capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

4) The Clerk of the Court is DIRECTED to terminate the remaining Defendants listed on the docket as parties.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has entered an appearance before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After service of process, the Court will enter an order setting discovery and dispositive motion deadlines.

7) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. Generally, an answer sets forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses

sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will provide more detailed information about the discovery process.

10) **Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.**

11) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

12) **If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

13) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

14) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

ENTERED July 25, 2025.

s/ *Colleen R. Lawless*

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE