E-FILED
Tuesday, 08 September, 2026 03:08:29 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| **KEVAS L. BALLANCE, JR.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-3100** |
| | ) | |
| **JOHN MOON *et al.*,** | ) | |
| **Defendants.** | ) | |

**ORDER**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court are Motions to Request Counsel (Doc. 43), to Substitute (Doc. 44), for Leave to File a Second Amended Complaint (Doc. 45), and for Injunctive Relief (Doc. 46) filed by Plaintiff Kevas L. Balance, Jr., an inmate at Lawrence Correctional Center ("Lawrence"). Defendant John Moon has filed Motions regarding discovery (Docs. 48, 49, 51) and to withdraw (Doc. 50).

## I. Background

Plaintiff's Amended Complaint (Doc. 29) alleged constitutional violations at Western Illinois Correctional Center ("WICC"). Following screening, the Court determined that because Plaintiff's pleading concerned the neutrality of Adjustment Committee members Adam B. Manton and Brant A. Mountain,[1] Plaintiff stated a due process claim against them, as well as Defendant Corrections Officer Moon for allegedly

[1] The Court granted Summary Judgment to Manton and Mountain and dismissed them as parties because Plaintiff failed to exhaust his administrative remedies as to the alleged claim against them.

coercing Plaintiff to plead guilty, and Defendant Doe IV for authoring a false disciplinary report. The Court also determined that Plaintiff stated a First Amendment retaliation claim against Defendants John Doe I, II, IV, V, and VI. The Court informed Plaintiff that because service of process could not occur upon a Doe Defendant, Plaintiff would need to identify those individuals during the discovery phase and move to substitute the real names of the Doe Defendants within the deadline imposed by the Court. (Doc. 28 at 5-7.)

**II. Motion to Substitute**

As noted, the Court determined Plaintiff's amended pleading stated First Amendment retaliation claims against Defendants John Doe I, II, IV, V, and VI, and a Fourteenth Amendment due process claim against Doe IV for falsely accusing Plaintiff of committing a rule violation. However, the record shows that Defendant Moon was the official who wrote Offender Disciplinary Report 202301389/1-WIL, which alleged the prison rule infractions at issue in this case.

In accordance with the Court's instructions, Plaintiff filed a Motion to Substitute (Doc. 44) N. Gossage and Corrections Lieutenants Rick Forman and Gandara for "any 'Doe' Defendants," which is granted. The Clerk of the Court is directed to add Forman, Gandara, and Gossage as Defendants, serve Defendants Forman, Gandara, and Gossage under the standard procedures, and terminate John Doe I, II, IV, V, and VI as parties.

The Court clarifies that the remaining alleged constitutional violations in this case are a First Amendment retaliation claim against Defendants Forman, Gandara, and Gossage and a Fourteenth Amendment due process claim against Defendant Moon.

## III. Leave to File Second Amended Complaint

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"District courts, nevertheless, 'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). The Seventh Circuit will not reverse a district court's decision not to grant leave to amend a complaint "when the court provides a reasonable explanation for why it denied the proposed amendment." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

Initially, the Court notes that a portion of Plaintiff's second amended complaint is identical to his amended complaint in that Plaintiff attempts to allege claims against the Illinois Department of Corrections ("IDOC") and IDOC officials based on their supervisory responsibilities, which this Court has rejected in screening Plaintiff's amended complaint. (Doc. 28 at 4, 7.) Plaintiff also refers to letters written to the supervisory officials Plaintiff cites as Exhibit D, which he does not append to his filing.

(Doc. 45 at 2.) Plaintiff further directs this Court to "some important facts," contained within his response to the dispositive motion filed by former Defendants Manton and Mountain. (Doc. 45 at 2.) Plaintiff also attempts to reserve twenty claims against unknown John and Jane Doe Defendants, which this Court denied when screening Plaintiff's amended pleading. (Doc. 28 at 7.)

More importantly, Plaintiff's second amended pleading does not name Defendants Forman, Gandara, and Gossage. *See Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (explaining that an amended complaint supersedes all prior complaints in their entirety, and therefore, a prior complaint does not revive a claim that was dropped in the amended complaint); *see also Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) ("Once the amended complaint was filed . . . it became the governing document in the case and any allegations . . . not brought forward fell by the wayside."). After consideration of the expenditure of court resources to rescreen rejected claims, Plaintiff's vague references to other filings, and the anticipated delays that would undoubtedly occur after Plaintiff realizes the effect of his second amended pleading on his First Amendment claims against Defendants Forman, Gandara, and Gossage, the Court denies Plaintiff's Motion for Leave to file a Second Amended Complaint.

If Plaintiff elects to file a third amended pleading, that filing must contain a "*short and plain statement* of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2) (emphasis added). The Court does not accept piecemeal amendments. Plaintiff's amended complaint must stand independently without reference to his initial or other

filing and contain all claims against all defendants. In other words, Plaintiff's amended complaint must concisely specify the constitutional violation, when it occurred, and the Defendant or Defendants personally involved. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.").

**IV. Injunctive Relief**

The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). A preliminary injunction is an "extraordinary and drastic remedy" and "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). In civil suits, "damages are the norm, so the plaintiff must show why his case is abnormal." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 275 (7th Cir. 1992)).

"To determine whether a situation warrants such a remedy, a district court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) [he] will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal

remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018). Moreover, the Seventh Circuit has described the type of injunction requiring affirmative action as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued" because they require the court to command a defendant to take a particular action. *Id*.

Plaintiff requests that the Court issue a mandatory preliminary injunction enjoining IDOC and its employees from using the "'highly inaccurate' and 'unreliable'" Sirchie NARC II test kits, which are employed to identify potential narcotics. In this regard, Plaintiff claims he is likely to succeed on the merits of his underlying Fourteenth Amendment due process claim because the Adjustment Committee that considered an Offender Disciplinary Report accusing Plaintiff of violating rules regarding drug and drug paraphernalia and the transferring of funds relied solely on the NARC II kit to find he committed the violations. However, the record refutes Plaintiff's assertion.

Setting aside the fact that Plaintiff pleaded guilty to the alleged rule violations, the Committee documented the evidence it considered, as follows:

> This report is being submitted following the conclusion [of] an investigation concerning the discovery of Synthetic Marijuana at [WICC]. On [July 4, 2023,] at approximately 6:15 pm [Plaintiff] was in the process of moving into housing Unit R1 from housing unit R3 when staff observed [Plaintiff] stumbling several times on the walks and slurring his words[,] appearing to be under the influence of an unknown substance. R1 housing unit staff conducted a pat search of [Plaintiff] and discovered two AA batteries (homemade lighter) in [Plaintiff's] right pocket and a square of tan colored

> legal work measuring ½ x ½ inch located in [Plaintiff's] phonebook in his left pocket. [Plaintiff] was handcuffed and escorted to Restrictive Housing where he was placed under Investigative status pending further investigation. Due to the paper that was discovered on [Plaintiff's] person being consistent with past findings of Synthetic Marijuana at WICC, the Intel Unit tested the tan colored legal work utilizing a Sirchie Nark II 2C Reagent test kit[,] which yielded a Positive result for Synthetic Marijuana. Intel reviewed [Plaintiff's] calls placed on [July 4, 2023,] on the yard and identified [Plaintiff] having his mother send money ($200) to another [inmate.] The Intel Unit conducted an interview with [Plaintiff,] who admitted that he had been smoking [Synthetic Marijuana] prior to moving into R1 and admitted that the paper inside of his phonebook was K2 that he had purchased earlier that morning. [Plaintiff] stated that he has been trying to quit smoking due to him having a bad high once before at WICC from smoking what he believed to be K2. [Plaintiff is] being charged with 203-Drugs and Drug Paraphernalia and 306-Transfer of Funds.

(Doc. 37-2 at 2.)

Even if Plaintiff had not pleaded guilty, the Committee documented ample evidence supporting its recommendation to impose segregation for twenty-nine days and downgrade Plaintiff's classification to C Grade. *See Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987) ("A prison disciplinary committee is required to give a brief statement of the evidentiary basis for its decision to administer discipline, so that a reviewing court, parole authorities, etc. can determine whether the evidence before the committee was adequate to support its findings concerning the nature and gravity of the prisoner's misconduct.").

Therefore, because Plaintiff has not shown a likelihood of success on the merits of his underlying Fourteenth Amendment claim, his Motion for Injunctive Relief (Doc. 46) is denied.

**V. Counsel**

The law is clear that this Court lacks the authority to require an attorney to accept *pro bono* appointments in civil cases. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). At most, the Court may ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding it is a "fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court").

Title 28 U.S.C. § 1915(e)(1) "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*. *Pruitt*, 503 F.3d at 653. In exercising its discretion to recruit counsel, a district court must determine (1) whether the indigent plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Id*. at 654. The first inquiry is a mandatory threshold determination and requires the plaintiff to attempt to obtain a lawyer independently. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021).

In support of the first inquiry, Plaintiff appends five rejection letters from various law firms declining to represent Plaintiff. Thus, the Court concludes Plaintiff has satisfied his initial threshold under *Pruitt*, by showing he attempted to obtain counsel. *Id*. at 503 F.3d at 654.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682. These considerations "'are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand.'" *Id*. (quoting *Pruitt*, 503 F.3d at 655). Courts should consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Eagan*, 987 at 682.

The assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include "the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* "Although there are no fixed criteria for determining whether a plaintiff is competent to litigate his … case, a district court certainly should consider the plaintiff's literacy, communication skills, educational level, litigation experience, intellectual capacity, and psychological history." *Id*. at 682-83. The Seventh Circuit has held that appointment of counsel should occur in cases in which counsel would have made a difference in the outcome of the litigation (*Santiago v. Walls*, 599 F.3d 749, 465 (7th Cir. 2010)) but has also held the test for appointment of counsel is not whether a lawyer could more effectively manage the case. *Pruitt*, 503 F.3d at 655.

In support of his request for counsel, Plaintiff claims that discovery is challenging given his incarceration, which the Court noted in its Scheduling Order before explaining

the written discovery tools available under the Federal Rules of Civil Procedure. (Doc. 36 at 5:12.) Plaintiff also claims he requires "documents and records" he "is not allowed to have that are very important to this case." (Doc. 43 at 1.) However, Plaintiff neither identifies these documents, asserts he requested them from Defendants, nor has he filed a Motion to Compel production from Defendants or a Motion to Subpoena these records from third parties as the Court's Scheduling Order instructs. (Doc. 36 at 6:16; 6-7:20.) Plaintiff further claims that (1) the issues are complex, (2) he has no legal experience, (3) and that he has memory loss based on a physical altercation at WICC in May 2024, which he does not support with any medical documentation. (*Id*. at 2-3.)

Thus, Plaintiff does not establish persuasive reasons why he cannot prosecute his claim during the discovery and dispositive motions stages or why his case differs from any other of the many *pro se* plaintiffs who ask for the appointment of counsel in almost every lawsuit filed. *DeWitt v. Corizon, Inc.*, 760 F.3d 654, 657-58 (7th Cir. 2014); *see also Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir 2013) (noting the district judge did not consider the plaintiff's assertions of "limited education, mental illness, language difficulties, and lack of access to fellow prisoners or other resources for assistance after his transfer from Stateville" in denying the motion for counsel).

A review of Plaintiff's filings in the instant case demonstrates his ability to comply with the Court's established deadlines and draft documents and responses with citations to relevant legal authority that convey facts and his intent clearly and succinctly. Thus, at this stage of the litigation, Plaintiff's ability to conduct discovery, which will be reset after

Defendants Forman, Gandara, and Gossage have been served and filed their Answer, does not appear to be beyond his capability given his knowledge of the facts, which are not complex.

If any claims survive summary judgment, the Court will direct the parties to proceed to a settlement conference. If the parties do not reach a settlement, this case will be set on the Court's trial calendar. Plaintiff may renew his Motion for Counsel after the Court rules on the parties' dispositive motion. Thus, the Court concludes Plaintiff has not fulfilled the second requirement, as he appears competent to represent himself at this stage of the litigation. Accordingly, Plaintiff's Motion for Counsel (Doc. 23) is denied.

## VI. Defendant Moon's Motions

The Court denies Defendant Moon's Motion to Stay Discovery (Doc. 48) but grants his Motions to Amend the Scheduling Order (Docs. 49, 51). As noted, after Defendants Forman, Gandara, and Gossage have been served and filed their Answer, the Court will reset discovery and dispositive motion deadlines. To the extent feasible, the parties should continue to engage in discovery on Plaintiff's Fourteenth Amendment claims.

Defendant Moon's Motion to Withdraw (Doc. 50) is granted. The Clerk of the Court is directed to terminate Assistant Attorney General Zherong Kang as attorney of record for Defendants.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motions for Counsel (Doc. 43), Leave to File a Second Amended Complaint (Doc. 45) and Injunctive Relief (Doc. 46) are DENIED.**

2) **Plaintiff's Motion to Substitute (Doc. 44) is GRANTED.**

**3) Defendant Moon's Motion to Withdraw (Doc. 50) is GRANTED.**

**4) The Clerk of the Court is DIRECTED to add Rick Forman, Gandara, and N. Gossage as Defendants, serve Defendants Forman, Gandara, and Gossage under the standard procedures, terminate John Doe I, II, IV, V, and VI as parties, and terminate Assistant Attorney General Zherong Kang as attorney of record for Defendants.**

**5) Defendant Moon's Motion to Stay Discovery (Doc. 48) is DENIED.**

**6) Defendant Moon's Motions to Amend Scheduling Order (Docs. 49, 51) are GRANTED.**

**7) The Court will reset discovery and dispositive motion deadlines after Defendants Forman, Gandara, and Gossage have been served and have filed their Answer.**

ENTERED September 8, 2026.

s/ *Colleen R. Lawless*

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE